IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID O'DONNELL, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-2687-S-BK |
| § | |
| AVIS RENT A CAR SYSTEM LLC, § | |
| ET AL., § | |
|     DEFENDANTS. § | |

**ORDER**

Pursuant to 28 U.S.C. § 636(b) and the District Judge's referral order, Doc. 35, before the Court is Plaintiff's *Motion to Compel Discovery (Deposition Testimony, Production of Documents and Interrogatory Answers)*. Doc. 94. As detailed below, the motion is **GRANTED IN PART**.

**I.   BACKGROUND**[1]

This lawsuit arises out of an automobile accident. Juan Pablo Zavala Diaz ("Zavala Diaz"), a citizen of Spain, leased a vehicle from an Avis entity pursuant to a Rental Agreement through which he also purchased additional liability insurance (the "ALI Policy"). While driving the vehicle, Zavala Diaz collided with the car in which Plaintiff was a passenger, causing Plaintiff and others various injuries. In November 2016, Plaintiff sued Zavala Diaz and others in state court for damages, and the case was removed to this Court in July 2017. In October 2019, the Court entered a default judgment in Plaintiff's favor against Zavala Diaz and awarded Plaintiff $2 million plus interest.

---

[1] Unless otherwise noted, the facts in this section are drawn from the Court's order entered on October 1, 2020. Doc. 78.

Plaintiff then filed an application for a turnover order under Texas state law, requesting that the Court order the turnover to him of Zavala Diaz's state law causes of action against his contractual insurer. In May 2020, the Court entered a turnover order as to all legal claims Zavala Diaz may have against any party arising out of the car accident and closed the case. *See O'Donnell v. Zavala Diaz et. al*, No. 3:17-CV-1922-S-BK at Doc. #94.

In the meantime, Plaintiff filed this parallel action in November 2019 against several entities, to include (1) Avis Rent A Car System, LLC ("ARCS"); (2) Sedgwick Claims Services ("Sedgwick"); and (3) Ace American Insurance Company, the ALI Policy insurer ("Ace"). On December 10, 2020, Plaintiff filed the instant motion to compel, which is now ripe for disposition. Doc. 94. Since that time, Plaintiff also filed the operative *Third Amended Complaint*. Therein, Plaintiff — as Zavala Diaz's judgment creditor — sues the remaining Defendants, ARCS and Ace, for, *inter alia*, breach of the Rental Agreement and the ALI Policy, respectively, negligent misrepresentation, bad faith, fraud, and violation of the duty to settle imposed by *G.A. Stowers Furn. Co. v. Am. Indem. Co*., 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). Doc. 115 at 15-34. ARCS and Ace recently moved to dismiss Plaintiff's *Third Amended Complaint*. Doc. 117.

## II.   APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that unless the court otherwise orders, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." To that

end, Rule 26(b) requires that the court limit the extent of discovery, on motion or *sua sponte*, if (1) the discovery is unreasonably cumulative or can be obtained in a less burdensome or expensive way; (2) the party seeking discovery had ample opportunity to discover the information; or (3) the burden imposed outweighs the likely benefit of the information considering the overall nature of the case. FED. R. CIV. P. 26(b)(2)(C).

Rule 37(a) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to answer interrogatories or produce documents. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Whether responding to an interrogatory or request for production ("RFP"), any ground not stated in a timely objection is waived unless the court, for good cause, decides otherwise. *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018). The objecting party then must, in response to a motion to compel, "urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection." *Id.* at 583 (citing *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016)). "Serving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Id.* at 581 (internal quotation marks omitted) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 477 (N.D. Tex. 2014)).

Further, a party declining to produce documents must show specifically how each RFP is not relevant or is otherwise objectionable as overly broad or burdensome. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Failure to do so is "not adequate to voice a successful objection." *Id.* (citation omitted). Demonstrating that

RFPs are overly broad or otherwise unreasonable in scope generally requires the submission of an affidavit or other evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

### III.  ANALYSIS

As an initial matter, ARCS objects to several of Plaintiff's RFPs and interrogatories on the basis that the documents sought are irrelevant because Plaintiff does not have a pending bad faith or fraud claim. Since the instant motion became ripe, however, the landscape of the case has changed significantly, as outlined above. Specifically, Plaintiff has filed his *Third Amended Complaint* raising bad faith and *Stowers* claims among others, which renders ARCS's objections in this regard moot. *See* Doc. 115 at 12-33; *see generally D & M Marine, Inc. v. Turner*, 409 S.W.3d 853, 858 (Tex. App.—Fort Worth 2013) (holding that insured's potential claims against insurer for bad faith and failure to indemnify were proper subjects of turnover order so that insured's clients could recover any interest under insurance policies); *cf. Whatley v. City of Dallas*, 758 S.W.2d 301, 307 (Tex. App.—Dallas 1988) (holding that plaintiff could not bring a *Stowers* claim because it was not assigned to him and he thus did not own it). Accordingly, ARCS's objections on this basis, which pertain to RFP Nos. 6-9, 13, and 15-17, as well as Interrogatory 22, are **OVERRULED**. Additionally, to the extent ARCS's responses rely on unsupported, boilerplate, stock objections, they are **OVERRULED** and will be noted *infra* only as needed for context. *See Lopez*, 327 F.R.D. at 581; *Heller*, 303 F.R.D. at 490. Plaintiff also

initially objected to ARCS's response to Interrogatory 11 but has since withdrawn the objection. Doc. 96 at 367. The remainder of ARCS's objections will be addressed in turn below.

### A. RFP Nos. 6-7

RFP No. 6 seeks information about ARCS's handling guidelines for bodily injury claims or manuals for a six-year period. Doc. 94 at 10. RFP No. 7 requests ARCS's internal policies and procedures for adjusting claims involving customers who are foreign nationals. Doc. 94 at 11. Among other boilerplate objections, ARCS asserted in a conclusory manner that these RFPs are unduly burdensome. Doc. 94 at 10-11. In response to Plaintiff's motion, ARCS now explains that the discovery is burdensome because it "will require considerable time, money, and resources to identify, gather, and prepare" the documents, and the timeframe for RFP 6 is overbroad. Doc. 96 at 359-60. ARCS's explanation, however, is both tardy and unsupported by the necessary evidence. *Lopez*, 327 F.R.D. at 581; *Merrill*, 227 F.R.D. at 477. The Court further finds that the discovery sought is relevant although, in its discretion, will limit the timeframe for RFP 6 to the two-year period of January 1, 2015 through January 1, 2017, inclusive. Otherwise, ARCS's objections are **OVERRULED**.

### B. RFP No. 8 and Interrogatory 18

RFP No. 8 seeks documents pertaining to any loss reserves that were established for Plaintiff. Doc. 94 at 11. ARCS objects on relevance grounds and asserts the documents are protected by the work product doctrine. Doc. 96 at 360.

The federal work product doctrine provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). To qualify as work product, "the

primary motivating purpose" behind the creation of the document must be "to aid in possible future litigation." *In re Kaiser Aluminum & Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000). If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation. *Id.*

Loss reserves are an insurance company's best estimate of the eventual cost of a claim, including both the cost of indemnifying the insured and of adjusting the claim. *See Maryland Cas. Co. v. United States*, 251 U.S. 342, 358 (1920) (noting that the term "reserves" has a special meaning in the insurance context and includes (1) "unearned premium reserve" to meet future liabilities on policies, (2) "liability reserve" to satisfy claims indefinite in amount and as to time of payment, but accrued on liability policies, and (3) "reserve for loss claims" accrued on policies other than those provided for in the liability reserve).

Upon consideration, the Court finds that RFP No. 8 is sufficiently specific, seeks relevant information, and the documents sought are not protected work product. *See Trinity East Energy, LLC v. St. Paul Surplus Lines Ins. Co.*, No. 4:11-CV-814-Y, 2013 WL 12124022, at *2-3 (N.D. Tex. March 8, 2013) (Cureton, J.) (holding that discovery regarding insurer's loss reserves was relevant to plaintiffs' bad faith claim); *Swicegood v. Med. Prot. Co.*, No. Civ.A. 3:95-CV-0335-D, 2004 WL 1698285, at *3-4 (N.D. Tex. July 29, 2004) (Fitzwater, J.) (same as to *Stowers* claim). This ruling also largely moots the motion as to Interrogatory 18, which asked ARCS to "[d]escribe the amount of reserves established for Plaintiff's claim and any changes made thereto and the reasons for such changes." Doc. 94 at 8. Only "the reasons for such changes" are protected as work product. ARCS's objections to RFP 8 are thus **OVERRULED**, and ARCS's objections to Interrogatory 18 are **SUSTAINED IN PART**.

### C. RFP Nos. 9, 15, 17 and Interrogatory 24

RFP No. 9 seeks all reinsurance policies pertaining to Plaintiff's judgment against Zavala Diaz or this case. Doc. 94 at 11. RFP No. 17 requests documents reflecting the draft history of the Rental Agreement and ALI Policy. Doc. 96 at 363. Putting aside ARCS's boilerplate objections to these RFPs, the Court finds that the limited documents requested by RFP No. 9 are relevant, and ARCS's objection is **OVERRULED**. However, the Court agrees with ARCS that the documents requested in RFP No. 17 are general and not relevant; thus, ARCS's objection to RFP 17 is **SUSTAINED**.

RFP No. 15 requests ARCS's communications with the Texas Department of Insurance ("TDI") regarding its approval of ARCS's ALI coverage and self-insurance as well as complaints about its claims handling practices. Doc. 94 at 13. Notwithstanding its boilerplate objections, ARCS specifically questions the RFP's relevance. Doc. 94 at 13. Upon consideration, the Court finds that the only relevant complaints to TDI would involve ARCS's ALI claims handling process. The same rationale applies to Interrogatory 24, which seeks contact information for customers who have complained about ARCS's ALI claims handling procedures. Doc. 94 at 9. Additionally, the Court temporally narrows the scope of the RFP 15 and Interrogatory 24 to seek the requested documents and information only for the period of January 1, 2015 through January 1, 2017, inclusive. Accordingly, ARCS's relevance objections to RFP. No. 15 and Interrogatory 24 are **SUSTAINED ONLY IN PART**.

### D. RFP Nos. 10, 12, and 16 and Interrogatory 19

RFP Nos. 10, 12, and 16, as well as Interrogatory 19 request information about other ARCS customers who purchased ALI but were then denied a defense, which Plaintiff claims may shed light on his bad faith claim. Doc. 94 at 8, 11-13. ARCS objects to these discovery

requests as, *inter alia*, irrelevant. Doc. 94 at 8, 11-13; Doc. 96 at 361-63, 369. In support of its argument that the discovery imposes an undue burden, ARCS has submitted the Declaration of Amber Keever, who has been employed as a litigation consultant with independent insurance adjuster Sedgwick since 2015. Doc. 96 at 26. Keever avers that "[Avis has] thousands of claims filed each year, not all of which involve [ALI]. Our system is not set up to allow for a claims search for only claims involving [ALI]. Any such search would have to be conducted by hand and would require an enormous amount of time, money and effort." Doc. 99-1 at 2. This satisfies ARCS's burden of showing that RFP Nos. 10, 12, and 16 and Interrogatory 19 are unduly burdensome. *Brady*, 238 F.R.D. at 437. Accordingly, these objections are **SUSTAINED**.

### E. RFP No. 11

RFP No. 11 requests the regulatory and underwriting files which pertain to the ALI Policy. Doc. 94 at 12. ARCS asserts the discovery is irrelevant because whether its insurance arrangements were approved by TDI has no bearing on Plaintiff's claims. Doc. 96 at 361. Plaintiff asserts that the request is relevant because if TDI rejected ARCS's insurance terms and conditions, it would bear on the issue of ARCS's bad faith claims handling. The Court agrees with ARCS on this point — the relevance of the discovery sought is simply too tenuous. The objection is **SUSTAINED**.

### F. RFP No. 18

RFP No. 18 seeks all law firm billing audits pertaining to the defense of Plaintiff's claims. Doc. 94 at 14. ARCS first asserts that this RFP is "vague" and "nonspecific" because it is "unknown what 'law firm' Plaintiff refers to [and it] is also unclear what Plaintiff means by 'billing audits.'" Doc. 94 at 14. These objections are **OVERRULED** insofar as (1) they are

largely impermissible boilerplate and (2) ARCS's assertions that it does not know what law firm Plaintiff is referring to or what a billing audit is are specious.[2] *See Lopez*, 327 F.R.D. at 581; *Heller*, 303 F.R.D. at 477 (holding that an objection to discovery may not be made until counsel "has paused and considered whether, based on a reasonable inquiry, there is a factual basis for the objection.") (cleaned up).

ARCS also asserts that the requested discovery seeks irrelevant information which is protected by both the attorney-client privilege and the work product doctrine. Doc. 94 at 14. Plaintiff contends that "[l]aw firm billing audits constitute a waiver of attorney-client privilege and are relevant to which entity is entitled to assert the privilege." Doc. 94 at 14. Plaintiff cites no case law in support of this statement, however, and the Court could find none. Plaintiff's assertion that the documents are necessary to determine the scope of representation and evaluate privilege claims fares no better, as that is the task of the Court. *See also In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 805 (Tex. 2017) (holding that insurer's attorney billing information, including invoices, payment summaries and audits, are protected work product). ARCS's objection to RFP No. 18 is **SUSTAINED**.

### G. Documents on ARCS's Second Amended Privilege Log

The documents ARCS submitted for *in camera* inspection fall into three categories: (1) emails dating back to November 2016, which ARCS claims are attorney-client privileged; (2) letters to Zavala Diaz, which ARCS also claims are attorney-client privileged; and (3) various

---

[2] As the Texas Supreme Court has observed, some insurance companies impose billing restrictions and subject their attorneys to billing audits. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 633-34 (Tex. 1998).

Sedgwick claim file notes and related documentation which are claimed to be protected work product.

### 1. *Emails to Defense Counsel*

The emails in question commence on November 22, 2016, when a Sedgwick adjuster advises defense counsel regarding "the attached new suit," and continue to the present. The Court readily concludes that the attorney-client privilege applies to the entirety of the emails ARCS tendered to the Court for review.

### 2. *Letters to Zavala Diaz*

ARCS claims that two letters mailed to Zavala Diaz are privileged. The undersigned disagrees. The letters merely entreat Zavala Diaz to contact defense counsel so that they may represent his interests, a request to which he did not respond. This is insufficient to establish an attorney-client relationship and the letters are thus not privileged.

### 3. *Claim File and Related Documents*

a. Sedgwick's Claim File Notes ("Claim File")

The Claim File contains the majority of the documents at issue. A brief timeline will aid in assessing the applicability of the work product doctrine. The accident in this case occurred on January 15, 2015. A letter dated January 22, 2015, from the legal assistant of attorney Ronald D. Grant to ARCS advised that he was representing Plaintiff and others injured in the accident. Doc. 96 at 25. A few days later, an adjuster with Fleetwood Claim Service ("Fleetwood") noted that she had informed an ARCS employee that she was taking over the file from a co-worker.[3] On February 13, 2015, the Claim File was updated to reflect that Zavala Diaz had ALI coverage.

---

[3] It appears that Fleetwood handled the claim until at least March 2016 before Sedgwick became the adjuster.

10

ARCS points to Attorney Grant's letter as the moment it anticipated litigation would ensue. To that end, ARCS relies primarily on Keever's Declaration, in which she states that:

> One of the documents in the claim file was a letter of representation from David O'Donnell's former attorney, Ronald E. Grant, dated January 22, 2015, making a claim for personal injuries on his behalf. Upon receipt of this letter, Avis, and later Sedgwick, anticipated that litigation would ensue. At the time the initial claim was presented, O'Donnell was represented by counsel. His injuries included a head injury for which he was hospitalized. The accident involved four vehicles and multiple hospitalizations. These facts lead [sic] the claims adjusters for Avis and Sedgwick to anticipate that litigation is likely to ensue.

Doc. 99-1 at 1. Notably, Keever's name does not appear in the Claim File until August 2017. Thus, despite her representations, it is unclear how she can reliably testify about ARCS's state of mind more than two years earlier. Doc. 99-1 at 1-2. Certainly it is possible that one could have been anticipated litigation upon receipt of Grant's letter, but the law of this circuit requires that "the primary motivating purpose behind the creation of the document [be] to aid in possible future litigation." *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." FED. R. CIV. P. 26(b)(3), ADV. COMM. NOTES; *see also United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

Among the factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Zenith Ins. Co. v. Texas Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) (cleaned up). Moreover, like all privileges, the work product doctrine must be strictly construed. *Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 596 (N.D. Tex. 2017) (citation omitted). The burden is on the party

11

who seeks work product protection to make the required showing.  *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). Although a privilege log and *in camera* review of documents may assist the court in its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id.* (citation and internal quotation marks omitted).  Judged against this standard, ARCS has failed to meet its burden as to all of the Claim File.

ARCS asserts in its *Second Amended Privilege Log* that the documents at issue are authored by "claims adjusters employed by Avis and/or Sedgwick" and became protected following receipt of Grant's January 2015 letter of representation.  Doc. 96 at 348.  While ARCS generally identifies the subject matter contained in the notes, i.e., "liability analysis, damages analysis, litigation strategy," this is not a particularly detailed description of the materials.  It is also doubtful that ARCS's reasons for its claim of protection are sufficiently "specific and precise."  *Navigant*, 220 F.R.D. at 473-74.

Moreover, the Court's *in camera* review reveals that many of the documents withheld are of such a nature that they would be prepared in the ordinary course of a typical insurance claim review.  "[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." *Douga v. D & A Boat Rentals, Inc.*, No. Civ. A. 04-1642, 2007 WL 1428678 at *4 (W.D. La. May 10, 2007) (quoting *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (holding that insurer had to produce witness statements taken by investigating adjuster with whom plaintiff's counsel engaged in settlement negotiations)).

In the context of an insurance dispute, the question whether documents are work product often depends on whether the insurer can point to a "definite shift" from acting in its ordinary course of business to acting in anticipation of litigation. *See Dartson v. Villa*, No. 3:17-CV-569-M, 2018 WL 3528721, at *14 (N.D. Tex. Apr. 2, 2018) (Horan, J.) (citing *Lanelogic, Inc. v. Great American Spirit Ins. Co.*, No. 3:08-CV-1164-BD, 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (Kaplan, J.)). Notwithstanding ARCS's self-serving Declaration, other evidence suggests that *litigation* concerns were not ARCS's primary motivating purpose for creating the documents at issue. *Lanelogic, Inc.*, 2010 WL 1839294, at *5-6 (noting "self-serving" nature of insurer's statement that "the primary motivating purpose for the creation of such documents was to aid in possible future litigation" to be and finding that adjuster sought legal advice on coverage issues rather than in contemplation of litigation); *see also Skogen v. RFJ Auto Group, Inc. v. Emp. Benefit Plan*, No. 4:19-CV-585-SDJ-KPJ, 2020 WL 5039101, at *3 (E.D. Tex. Aug. 26, 2020) (finding that work product doctrine did not apply to emails discussing investigation, evaluation, denial, and status of plaintiff's claims despite involvement of counsel because the matter was "nothing beyond the ordinary course of business of an insurance company.").

Notwithstanding ARCS's attempt to define the pertinent timeframe differently, the Court finds that the "definite shift" from ARCS acting in the ordinary course of business to acting in anticipation of litigation occurred in late November 2016. In particular, on August 30, 2016, Sedgwick's claim notes indicate that an adjuster informed an attorney calling on behalf of one or more of the injured parties about the latest settlement offer and advised that he was willing to negotiate further. The case was thus still in the investigatory/settlement negotiation phase. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View*, *LLC*, 3:16-CV-465-B, 2017 WL 2504954, at *6 (N.D. Tex. June 9, 2017) (Kaplan, J.) (holding that none of the evidence

13

submitted by defendant permitted the court to determine how any particular document was prepared "in anticipation of litigation," as opposed to having been prepared to assist insurance carrier with its coverage determination even after defendant had begun to anticipate litigation); *cf. Louis Vuitton Malletier v. Tx. Intern. P'ship*, No. H-10-2821, 2012 WL 5954673, at *3-4 (S.D. Tex. May 14, 2012) (holding that work product exemption applied from time plaintiff's investigator sent letter stating that it could institute a civil suit for various causes of action, that the letter served as formal notice of alleged illegal activity, demanding a halt to such activities, and warning that plaintiff was "prepared to commence appropriate legal proceedings").

In the instant case, many of the Claim Notes are investigatory in nature, reflecting (1) insurance claims submitted and paid; (2) the ongoing liability investigation; (3) Plaintiff's and others' medical status and updates; (4) insurance coverage amounts; (5) descriptions of the accident; (6) attempts to contact Zavala Diaz; and (7) loss reserve information. These documents simply are not protected by the work product doctrine. *See* FED. R. CIV. P. 26(b)(3), ADV. COMM. NOTES; *Zenith Ins. Co.*, 328 F.R.D. at 162; *Lanelogic, Inc.*, 2010 WL 1839294, at *5-6.

The last substantive entry in the Claim File is August 30, 2016 before it was noted on November 22, 2016 that suit had been filed and the case turned over to defense counsel. Sometime in the interim, the work product exemption kicked in. However, because ARCS has not met its burden of showing precisely when this occurred, the Court defines the date on which litigation was anticipated as November 22, 2016.[4]  Therefore, ARCS must produce to Plaintiff all documents in the claim file preceding that date. In light of the Court's rulings, Plaintiff's request

---

[4] Additionally, the Court's ruling on this point essentially moots the parties' dispute as to Interrogatory 14 which sought "the date that liability for Plaintiff's claims became reasonably clear." Doc. 94 at 8.

to re-depose Keever about the portions of the Claim File she reviewed during her deposition is **DENIED**. Doc. 97 at 4.

    b. Remaining Documents

The next documents ARCS claims are protected work product are "30-day reports" from Fleetwood to an ARCS adjuster dated February 9, 2014 and June 30, 2015 and related attachments.[5] The reports and attachments address several topics, including coverage limits, a description of the accident and attendant injuries, attempts to contact Zavala Diaz, liability, and damages. ARCS has not met its burden of demonstrating that the primary motivating purpose of the reports was to prepare for litigation, rather than a more or less routine ongoing investigation into a potentially resolvable claim. For the reasons explained above, these reports are not protected work product. *Zenith Ins. Co.*, 328 F.R.D. at 162. The Court has examined the remainder of the documents submitted by ARCS, namely a letter and an additional report, and concludes that they are protected work product.

## IV. CONCLUSION

For the reasons stated, Plaintiff's *Motion to Compel Discovery (Deposition Testimony, Production of Documents and Interrogatory Answers)*, Doc. 94, is **GRANTED IN PART** to the extent set forth above. In all other respects, the motion is **DENIED**. ARCS shall fully respond to the discovery requests (as modified herein) within 14 days of the date of this order.

---

[5] The former date appears to be a scrivener's error as the accident occurred in January 2015.

Further, the parties are **ORDERED** to participate in mediation no later than **June 30, 2021**. *See* Doc. 113.

**SO ORDERED** on April 14, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE