# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DAVID O'DONNELL, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:19-CV-2687-S-BK |
| | § | |
| | § | |
| AVIS RENT A CAR SYSTEM LLC | § | |
| AND ACE AMERICAN INS. CO., | § | |
| DEFENDANTS. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's referral order, Doc. 35, this case is

before the Court for pretrial management and is now ripe for a ruling on[1] (1) Defendant Ace

American Insurance Company and Defendant Avis Rent A Car System, LLC's (collectively,

"Defendants") *Rule 56 Motion for Summary Judgment*, Doc. 133; (2) Plaintiff's *Rule 56 Motion*

*For Summary Judgment On Coverage, Breach Of Contract, And Extra-Contractual Liability For*

*Violation Of The Texas Insurance Code, For Deceptive Trade Practices*, Doc. 136; and (3)

*Defendant Ace American Insurance Company's Rule 12(b)(1) Motion to Dismiss Plaintiff's*

*Third Amended Complaint*, Doc. 160.  For the reasons stated *infra*, Defendants' summary

---

[1] The Court is issuing a separate order forthwith disposing of (1) Defendants' *Partial Motion to Dismiss Plaintiff's Third Amended Complaint*, Doc. 117; (2) Plaintiff's *Motion to Disqualify Katherine Knight and HOAF*, Doc. 130; (3) Plaintiff's *Motion to Amend the Scheduling Order To Extend Time for Discovery and Dispositive Motions*, Doc. 131; (4) *Former Defendants' Request for Entry of Final Judgment Pursuant to Rule 54(b)*, Doc. 154; and (5) Plaintiff's *Rule 12(h) [sic] Motion to Strike Defendant [Ace's] Rule 12(b)(1) Motion to Dismiss*, Doc. 173.

judgment motion, Doc. 133, should be **GRANTED**, and Defendant Ace Insurance Company's

motion, as well as Plaintiff's motion, should be **DENIED**.

## I.    PROCEDURAL HISTORY[2]

This lawsuit arises out of an automobile accident.  Juan Pablo Zavala Diaz ("Zavala Diaz"),

a Spanish national, rented a car from an Avis entity pursuant to a Rental Agreement through

which he also purchased additional liability insurance (the "ALI Policy").  While driving the

vehicle, Zavala Diaz collided with the car in which Plaintiff was a passenger, causing Plaintiff

serious injuries.  In November 2016, Plaintiff sued Zavala Diaz and others in state court for the

damages he suffered (the "Underlying Case").  *See O'Donnell v. Zavala Diaz et. al*, No. 3:17-

CV-1922-S-BK, Doc. #5-5 at 1.  The case was removed to this Court in July 2017.

In October 2019, the Court entered a default judgment in Plaintiff's favor against Zavala

Diaz and awarded Plaintiff damages of $2 million plus interest.  Plaintiff then filed an

application for a turnover order pursuant to Texas Civil Practices & Remedies Code § 31.002[3]

(the "Turnover Action").  In May 2020, the Court entered the turnover order, transferring to

Plaintiff "any and all interest in legal claims" Zavala Diaz may have against any party arising out

of the car accident and closed the case.  *See O'Donnell v. Zavala Diaz et. al*, No. 3:17-CV-1922-

S-BK at Doc. #94.

---

[2] The facts in this section are drawn from the Court's FCR in a related case.  *See O'Donnell v. Zavala Diaz et al.*, No. 3:17-CV-1922-S-BK at Doc. #92.

[3] The Texas turnover statute is a procedural mechanism whereby a judgment creditor may seek the court's assistance in compelling a judgment debtor to turn over interest they have in nonexempt property that is in the debtor's possession or subject to their control.

## II.    THE PRESENT CASE

Meanwhile, Plaintiff filed this parallel action in November 2019 against numerous parties including, as relevant here, Avis Rent a Car System, LLC ("Avis") and Ace American Insurance Company ("Ace").  In the operative *Third Amended Complaint*, Plaintiff — as Zavala Diaz's judgment creditor — claims:  (1) collection by judgment creditor (as to Avis); (2) turnover of policy proceeds from Avis and/or Ace; (3) breach of the Rental Agreement (Avis); (4) breach of the ALI Policy (Ace); (5) negligent misrepresentation (Avis and Ace); (6) breach of the duty of good faith and fair dealing (Avis and Ace); (7) negligent undertaking (Avis and Ace); (8) violations of the Texas Insurance Code's [and associated administrative code's] prompt-pay provisions (Avis and Ace); (9) violation of the Texas Deceptive Trade Practices Act ("DTPA") (Avis and Ace); (10) Avis' violation of its duty under *G.A. Stowers Furn. Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. 1929); (11) fraud and fraudulent inducement (Avis and Ace); and (12) civil conspiracy (Avis and Ace).   Doc. 115 at 12-33.

Plaintiff contends that the purpose of this case is to (1) allow him to collect the amount of his judgment against Zavala Diaz; (2) enforce the Rental Agreement under which Zavala Diaz allegedly purchased ALI for up to $2 million now payable to Plaintiff as a result of the order in the Turnover Action; and (3) obtain an award of damages for his extra-contractual causes of action against Defendants as they were turned over to Plaintiff from Zavala Diaz.  Doc. 115 at 2-3.  Plaintiff asserts that his claims are pled in the alternative, to wit: (1) if Zavala Diaz (and Plaintiff as his judgment creditor) is entitled to indemnity, his claims are based on Defendants' refusal to defend and the withholding of insurance benefits, and (2) if the Court finds that Zavala Diaz (and thus Plaintiff as his assignee) is not entitled to indemnity, then his causes of action stem from Defendants' failure to sell him what they "explicitly promised him," namely up to $2

million in indemnity for accidents involving the rental car.  Doc. 115 at 3.  These motions followed.

## III.    APPLICABLE LAW

### A.  Rule 12(b)

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  Federal courts are of limited jurisdiction, without which they lack the power to adjudicate claims.  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015) (internal quotation marks and citation omitted).  Where subject matter jurisdiction is challenged, the party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist."  *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013).  Courts may dismiss a case for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Clark v. Tarrant Cty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986).  Because Ace's Rule 12(b)(1) motion disputes subject matter jurisdiction, the Court addresses first.

### B.  Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a

verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A party's conclusory and self-serving statements are insufficient to defeat summary judgment. *Koerner v. CMR Const. & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018) (holding that "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment") (citation omitted) (alterations in original).

## IV.    THE POLICY LANGUAGE

Before proceeding to the merits, an understanding of the Rental Agreement and ALI Policy language will prove useful.

Paragraph 20 of the Rental Agreement states in part:

> You'll pay for ALI coverage if available and you accept it. In that case, the coverage provided by us according to paragraph 19 above will be primary and the combined limits of liability protection shall be $1,000,000 or $2,000,000 . . . *instead* of the basic limits stated . . . above. This additional coverage will be provided to an authorized driver . . . under a *separate policy* of excess liability insurance more fully described in the available brochure . . . except that notwithstanding anything contained in this agreement, *the terms of the policy will at all times control*.

Doc. 135 at 7-8 (emphasis added). The "basic limits" language refers to paragraph 19, which essentially reduces Avis' exposure to "the minimum financial responsibility limits required by the law of the jurisdiction in which the accident occurs." Doc. 135 at 8; *see also* TEX. TRANSP. CODE §§ 601.072(a) & 601.124 (providing that when a renter does not purchase ALI, a car rental company need only provide $30,000.00 in coverage for bodily injury to or death of one person in an accident). The Rental Agreement incorporates the ALI Policy by reference. *See Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203-04 (5th Cir. 2020) (noting that making an agreement "subject to" the "Standard Terms and Conditions of Sale" that were available on request sufficiently incorporated such terms).

The ALI Policy provides:

> NOTICE OF LOSS: When an event causing injury or damage takes place which is reasonable [sic] likely to give rise to a claim under this Policy, written notice shall be given as soon as practicable by or on behalf of the Insured to the Company or any of its authorized agents in addition to any obligation the Insured may have under the Underlying Protection or any other insurance. Such notice shall contain particulars sufficient to identify the Insured and reasonably obtainable information concerning the time, place and circumstances of such event and pertinent details. The Insured's [sic] shall give like notice of any claim or suit on account of such event and shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative, together with copies of reports or investigations made by the Insured with respect to such claim or suit.

Doc. 135 at 28.

The ALI Policy further states that:

> ACTION AGAINST COMPANY: No action shall lie against the Company unless as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgement [sic] against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Doc. 135 at 26. Finally, the ALI Policy specifies, "[w]hen coverage is available to the Insured

6

under [the Rental Agreement], [Ace] although without obligation to do so, shall have the right and opportunity to associate in the defense and control of any claim or suit reasonably likely to involve Ace under the ALI Policy."  Doc. 135 at 21.

## V.    CLAIMS AGAINST ACE

### A.  Subject Matter Jurisdiction

Ace argues all of Plaintiff's claims against it should be dismissed for lack of standing based on a recent holding of the Court of Appeals for the Fifth Circuit.  Doc. 160 at 8 (citing *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300 (5th Cir. 2021)).  Ace asserts that under *Turner*, Plaintiff's claims are barred by the ALI Policy's "actual trial"/"no action" clause, thereby depriving this Court of subject matter jurisdiction.  Doc. 160 at 3-7.  Ace further asserts that if Plaintiff lacks standing due to the no-action clause, the Court lacks subject matter jurisdiction over all of Plaintiff's claims against Ace.  Doc. 160 at 3.

Plaintiff counters that he has standing because his default judgment against Zavala Diaz satisfies the "actual trial" clause in the ALI Policy, as Avis litigated the Underlying Case and this Court substantively analyzed the facts and evidence prior to entering the default judgment.  Doc. 174 at 13-16.  Next, as a policy matter, Plaintiff asserts that "an insurer cannot wrongfully withhold a defense and then avail itself of the benefits of the actual trial requirement."  Doc. 174 at 7-8 (citing extra-circuit cases).  Plaintiff points to the circular nature of Ace's argument, i.e., (1) an insurer wrongfully withholds a defense, (2) which results in a default judgment against the insured, (3) the injured party cannot collect on the insured's policy because they had no choice but to obtain a default judgment, and (4) the insurer asserts that the default judgment does not satisfy the "actual trial" requirement in the policy.  Doc. 174 at 10.  In other words, by wrongfully withholding a defense, Ace can point to the "actual trial" requirement to avoid

liability.  Doc. 174 at 10.

   1.  *Timeliness of the Rule 12(b)(1) Motion*

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Notwithstanding Plaintiff's arguments to the contrary, challenges to subject-matter jurisdiction can be raised at any time prior to final judgment. *Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 571 (2004).

   2.  *Applicable Insurance Law*

Before discussing the applicability of the *Turner* case, a brief primer on Texas insurance law is warranted.

   In *State Farm Fire & Casualty Co. v. Gandy*, the Texas Supreme Court held that a judgment for a plaintiff against an insured defendant, if rendered without "a fully adversarial trial," is neither binding nor admissible as evidence of damages in an action against the defendant's insurance company. 925 S.W.2d 696, 714 (Tex. 1996).  Subsequently, the court clarified the meaning of the phrase "fully adversarial trial." *See Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 666-67 (Tex. 2017).  In *Hamel*, the third-party plaintiffs obtained a non-adversarial judgment and an assignment from an insured defendant, then sued the insurer. *Id.* at 661.  The court concluded that because the plaintiffs had agreed not to enforce the judgment against the insured, thereby removing the insured's financial stake in the suit, the resulting judgment was not sufficiently adversarial for coverage purposes. *Id.* (noting that the agreement turned the suit "into a mere formality—a pass-through trial aimed not at obtaining a judgment reflective of the [plaintiffs'] loss, but instead at obtaining a potentially inflated judgment to enforce against

8

[defendant's insurance company]."). The court also held that the controlling factor in the analysis is

> whether, at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the defendant-insured's covered liability loss.

*Id*. at 666. Put differently, the court concluded that "adversity turns on the insured defendant's incentive to defend (or lack thereof)." *Id.* at 667.

Next, in *Landmark Am. Ins. Co. v. Eagle Supp. & Manuf. LP*, 530 S.W.3d 761 (Tex. App.—Eastland 2017), a case with a fact pattern similar to that presented here, the court considered a commercial policy provision which barred direct coverage actions under certain circumstances, to-wit:

> No action will be taken against [Landmark] unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the insured's obligations to pay shall [ ] have been finally determined, either by judgment against the insured *after actual trial*, or by written agreement of the insured, the claimant and the Company.

*Id*. at 770 (emphasis added).

The *Landmark* court held that "without a sufficient judgment against [the insured defendant], [the third-party plaintiff] does not have a ripe claim under the no-direct-action rule to pursue a breach of contract claim as a judgment creditor against [the insurer]." *Id.* at 772. In other words, the judgment against the insured defendant did not satisfy the no-direct-action rule because it was not the result of a fully adversarial trial under *Hamel* and *Gandy*. *Id.* (citing *Hamel*, 525 S.W.3d at 655; *Gandy*, 925 S.W.2d at 696).

Now to *Turner*. In that case, the plaintiffs obtained a default judgment in state court against a defunct entity, ATI, and subsequently filed a coverage action against ATI's insurer,

9

Cincinnati Insurance Company ("Cincinnati") to collect on the judgment. *Turner*, 9 F.4th at 306. The plaintiffs claimed that as judgment creditors of ATI, they were entitled to enforce Cincinnati's obligations under its contract with ATI. *Id.* Cincinnati removed the case to federal court, and the plaintiffs moved for partial summary judgment, arguing that Cincinnati wrongfully breached its duty to defend ATI. *Id.* The plaintiffs thus sought a trial wherein Cincinnati would defend ATI's interests so the plaintiffs could prove Cincinnati's duty to indemnify ATI and thereby gain access to the insurance policy funds. *Id.*

Cincinnati cross-moved for summary judgment arguing, *inter alia*, that the plaintiffs lacked standing to bring a direct action against it without either an adversarial judgment against ATI or a valid assignment from ATI. Notably, Cincinnati's policy did not include "actual trial" language, but it did require an "adjudication." *Id.* at 311. The district court granted summary judgment for Cincinnati based on plaintiffs' lack of standing to bring a direct action against Cincinnati because they had neither a judgment against ATI resulting from a fully adversarial trial nor a valid assignment of ATI's claims against Cincinnati. *Id.* at 307.

On appeal, the Fifth Circuit disagreed with the district court's conclusion on that point. Because Cincinnati's policy did not include an "actual trial" requirement, the appellate court held that the plaintiffs' default judgment served as an "adjudication" that satisfied the policy's "no-action" clause, despite the non-adversarial nature of the judgment. *Id.* at 313. Accordingly, the court held the plaintiffs had standing to bring their case.

*3. Waiver*

Plaintiff asserts that Ace has waived application of the "actual trial" provision because *Gandy*, *Hamel*, and *Landmark* are established law addressing denials of coverage in the same vein. Doc. 174 at 24. Thus, the argument goes, the holding in *Turner* is not "new law"

providing a basis for dismissal on subject matter jurisdiction grounds.  Doc. 174 at 24.  The

Court disagrees.  The *Turner* court noted that:

> Texas's highest court, though, has not decided a case involving the no-direct-action rule in the context of plaintiffs obtaining a judgment that is potentially insufficient. At the same time, the court decided each of the cases in the *Hamel* line — including *Hamel*, *Gandy*, *ATOFINA*, and *Block* — without any reference to the no-direct-action rule.  We must determine whether there is any overlap.

9 F.4th at 311.

Because the Texas Supreme Court had not directly answered the precise question at issue,

the Fifth Circuit proceeded to review cases from various state appellate courts, some of which

were seemingly inconsistent with *Landmark*.  *Id.* at 311-13 (citing *P.G. Bell Co. v. U.S. Fid. &*

*Guar. Co.*, 853 S.W.2d 187, 189-90 (Tex. App.—Corpus Christi-Edinburg 1993, no writ) &

*Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844, 846-88 (Tex. App.—Corpus Christi-Edinburg

1991, writ denied); *Gulf Ins. Co. v. Vela*, 361 S.W.2d 904, 908 (Tex. App.—Austin 1962, writ

ref'd n.r.e.); *Wright v. Allstate Ins. Co.*, 285 S.W.2d 376, 379-80 (Tex. App.—Dallas 1955)); *see*

*id.* at 313 (stating that "[w]e do not find a seamless web of caselaw").

The court concluded:

> [f]rom these authorities, we determine that the Texas Supreme Court would hold as follows.  First, the "general rule" applies, *i.e.*, a third-party plaintiff is barred from suing the defendant's insurer, when the third-party plaintiff has obtained neither a judgment nor agreement of any kind establishing the insured-defendant's liability. Second, if the third-party plaintiffs obtain a judgment, then the court must look to the language of the no-action clause to determine whether it is the sort of judgment that satisfies the no-direct-action rule.

*Turner*, 9 F.4th at 312.  As is plainly apparent, the *Turner* court ruled on what it deemed to be a

novel issue with no binding state supreme court precedent.  Ace did not waive its argument.

*4. Whether Turner Applies in this Case*

Plaintiff asserts that his claims against Avis are not affected by *Turner* because the case applies only to insurance companies, not self-insured entities like Avis. Doc. 174 at 3. Plaintiff contends that the Rental Agreement is a pure indemnity contract, not a traditional insurance agreement, and *Ace* is required under the *ALI Policy* to indemnify Plaintiff for the full amount of default judgment. Doc. 174 at 3-4.

To the extent they are cogent, Plaintiff's arguments are misguided. The Rental Agreement provides that Avis is self-insured to a legally required financial minimum and once that minimum is reached, ALI applies if purchased. "The term 'self-insurance' is a misnomer; in effect, a self-insurer does not provide *insurance* at all." *Hertz Corp. v. Robineau*, 6 S.W.3d 332, 336 (Tex. App.—Austin 1999) (emphasis in original). "A certificate of self-insurance merely shows that the state is satisfied that the holder has the financial wherewithal to satisfy a judgment against it within liability minimums set by the legislature." *Id.*; *see also U.S. Fire Ins. Co. v. Scottsdale Ins. Co*, 264 S.W.3d 160, 173 (Tex. App.—Dallas 2008) ("[U]nder policies containing a self-insured retention, the insured assumes the obligation of providing itself a defense until the retention is exhausted.") (quotation omitted). It is fundamentally inaccurate to call the Rental Agreement an "indemnity contract." *See Aerojet-Gen. Corp. v. Transport Indem. Co.*, 948 P.2d 909 (Cal. 1997), *as modified on denial of reh'g* (Cal. 1998) ("Self-insurance is equivalent to no insurance. As such, it is repugnant to the very concept of insurance. If insurance requires an undertaking by one to indemnify another, it cannot be satisfied by a self-contradictory undertaking by one to indemnify oneself.").

"Neither statute nor case law imposes upon [a self-insured car rental company] a duty to defend or to assume all the duties of an insurer." *Rice v. Alamo Rent-A-Car, Inc.*, 987 S.W.2d

12

231, 234 (Tex. App.—Beaumont 1999).  Nevertheless, if a rental agency expressly contracts with a driver to provide automobile liability coverage, it cannot "hide behind its status as a self-insurer to avoid liability that it had specifically promised to assume."  *Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 769 (Tex. App.—Dallas 1990), *writ denied*, 987 S.W.2d 231 (Dec. 12, 1990).  In *Hartford*, the rental agreement obligated self-insured Budget to provide liability coverage to its driver for bodily injury arising from operation of the vehicle.  *Id.* at 768.  The court reasoned that "[w]e cannot allow self-insurers to enter into contracts whereby they purport to provide 'liability coverage' and leave them free to ignore their contractual obligations.").  *Id.* at 769.  In the case at bar, the Rental Agreement expressly included liability coverage regardless of whether Avis was or was not self-insured.  *See* Doc. 135 at 6 (Rental Agreement's "Liability Protection" section).  Accordingly, *Turner* applies here.

     *5.    Whether Plaintiff Has Standing Based on the Default Judgment*

Plaintiff argues that he has standing to sue Ace for breach of contract because the default judgment against Zavala Diaz satisfies the "actual trial" requirement in the ALI Policy.  Doc. 174 at 4-8, 13-16.  In particular, Plaintiff points to the default judgment proceedings, whereby the Court is said to have conducted "a thorough evaluation of the facts and evidence" resulting in "a full-fledged fact-finding evaluation" rather than entering judgment as a merely ministerial act.  Doc. 174 at 14-15.  Plaintiff further suggests that the "actual trial" requirement has been met because Zavala Diaz was wrongfully denied a defense.  Doc. 174 at 13-14.

Taking the latter issue first, the problem with Plaintiff's argument is that neither the Rental Agreement nor the ALI Policy contained any "duty to defend" provision.  Indeed, the ALI Policy provided that Ace had a right to participate in the suit, but was not obligated to do so.  *See* Doc. 135 at 21.  When an excess insurer is provided the *option* to provide a defense, it may

decline to do so without breaching its duties under the insurance contract. *Laster v. Am. Nat'l Fire Ins. Co.*, 775 F. Supp. 985, 995 (N.D. Tex. 1991).

Next, under *Turner* and the Texas cases cited above, the question now before the undersigned is whether Zavala Diaz bore any actual risk of liability for damages at the time of the default judgment or had some other meaningful incentive to ensure the judgment accurately reflected Plaintiff's damages. *Turner*, 9 F.4th at 310 (citing *Hamel*, 525 S.W.3d at 662-23). If neither of these propositions apply, the default judgment in the Underlying Case does not bind Ace. *Id.* at 311.

"The possibility of being liable for damages or a settlement if the insurer does not ultimately cover it is an adequate incentive to make such a settlement adversarial." *HM Int'l, L.L.C. v. Twin City Fire Ins. Co.*, 13 F.4th 356, 361-62 (5th Cir. 2021). Typically, in cases where that possibility is absent, the scenario involves an insured assigning its right to sue the insurer to the party suing the insured as in *Gandy*, such that the insured did not retain any financial risk or other incentive to oppose the plaintiff's damages. In the absence of any such incentive, the insurer was not bound by the damages determination.

In *Twin City*, the insured sought coverage after being threatened with a negligence suit. *Id.* at 358. The insurance company declined to defend and, in the meantime, the insured settled with the plaintiffs in the underlying matter. *Id.* at 359. On appeal, Twin City argued that it had "no duty to indemnify because the settlement was not the result of an adversarial process." *Id.* at 361. The appellate court rejected this argument, concluding that the possibility of the insured being liable for damages or a settlement if Twin City did not defend it was a sufficient incentive to make the settlement adversarial. *Id.* (citing *Hamel*, 525 S.W.3d at 666). In other words, because the insured settled—knowing that if it lost its coverage suit it would be "on the hook to

14

pay the settlement" — it had the incentive to reach a fair settlement in the threatened negligence action. *Id.* at 362. The same can be said here. As Zavala Diaz was properly served in the Underlying Case and a default judgment was rendered against him, he is "on the hook" for the resulting damages award regardless of Ace's decision to not defend him. That is enough to render the default proceedings sufficiently adversarial under *Hamel*. *Id.*

A recent decision of the District Court for the Western District of Texas, *CBX Res., LLC v. Ace Am. Ins. Co.*, 320 F. Supp. 3d 853 (W.D. Tex. 2018), is distinguishable. There, the plaintiff hired Espada Operating, LLC ("Espada") to drill a well bore in a mineral tract. *Id.* at 854-55. When Espada's actions caused the well to be plugged and abandoned, CBX sued, *inter alia*, Espada. Espada then turned to its commercial general liability insurer, Ace, to defend the suit. *Id.* at 855. Ultimately, Ace withdrew its defense. *Id.* Espada thereafter failed to appear at both the pretrial and damages hearings. *Id.* at 856. Upon CBX's request, the state court entered a $105 million judgment in CBX's favor. *Id.* at 856, 860. The state court then entered a turnover order granting CBX ownership of Espada's causes of actions against Ace. *Id.* at 856. CBX subsequently filed suit in federal court against Ace for breach of contract, deceptive insurance practices, and the like. *Id.* The court granted summary judgment to Ace, finding that because its policy did not apply to the type of damages CBX had incurred, Ace had no duty to defend Espada. *Id.* The remaining parties then cross-moved for summary judgment to address whether CBX's judgment against Espada was binding on Ace. *Id.* at 856-57.

The court concluded that Espada had no "meaningful stake in the underlying judgment" once it lost the ability to retain counsel and subsequently failed to appear for the pretrial and damages hearings. *Id.* at 859-60 ("Extending *Hamel* and *Gandy* to the most straight-forward interpretation, the fact that Espada failed to appear at docket call in the underlying trial and

damages hearing, leads the Court to believe that the trial and underlying judgment was [sic] not fully adversarial and therefore cannot be used as evidence in this case.").

In the instant case, however, the facts are different. Aside from the default itself, there is no evidence before the Court suggesting that Zavala Diaz lacked the incentive to defend the case against him such as him being insolvent or otherwise incapable of or unwilling to oppose Plaintiff's case. Accordingly, the Court finds that Plaintiff has standing to bring his breach of contract claim against Ace. Moreover, despite Ace having no contractual duty to defend Zavala Diaz, the duty to indemnify is not dependent on a purported duty to defend. [4] *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 741 (Tex. 2009) ("We hold that the duty to indemnify is not dependent on the duty to defend and that an insurer may have a duty to indemnify its insured even if the duty to defend never arises."). Accordingly, Ace's *Rule 12(b)(1) Motion to Dismiss Plaintiff's Third Amended Complaint*, Doc. 160, should be **DENIED**.

### B. Breach of the ALI Policy

Turning to the merits of Plaintiff's claims, Defendants argue that they are entitled to summary judgment on Plaintiff's claim for breach of the ALI Policy. Doc. 134 at 14. In particular, Defendants assert that Zavala Diaz did not satisfy the ALI Policy's condition precedents requiring written notice of the Underlying Case and his cooperation, and they were thus prejudiced as a matter of law. Doc. 134 at 15-25.

---

[4] Nevertheless, Plaintiff's *Stowers* claim against Ace fails because *Stowers* does not apply to a cause of action against an "excess insurer for negligence, bad faith, or for unfair and deceptive practices in the handling of a claim brought by a third-party." *Emscor Mfg., Inc. v. All. Ins. Group*, 879 S.W.2d 894, 909-10 (Tex. App.—Hous. [14th Dist.] 1994), *writ denied* (Feb. 2, 1995) (holding that insured failed to state claim against excess insurer for *Stowers* violation when excess insurer had no contractual duty to investigate, negotiate, or defend insured and did not undertake such responsibility).

Plaintiff responds that Avis and/or its independent claims adjuster, Amber Keever, gave the required notice to Ace "by or on behalf" of Zavala Diaz in November 2017. Doc. 138 at 22, 145; Doc. 144 at 41, 45. If Ace required notice of the suit from Zavala Diaz personally, Plaintiff argues that Ace cannot show it was prejudiced due to the lack thereof. Doc. 144 at 44-50. Moreover, Plaintiff contends that although the ALI Policy does not specify what "cooperation" means, the Rental Agreement defines "cooperation" as either filling out an incident report or otherwise cooperating, which Zavala Diaz did. Doc. 144 at 14-15, 44.

As set forth in more detail above, the ALI Policy states that when it appears likely an event that causes injury will give rise to a claim, Ace must be given written notice as soon as practicable "by or on behalf of the Insured to the Company or any of its authorized agents." Doc. 161 at 25. The ALI Policy further requires that the insured forward to Ace all demands, notices, summons and the like. Doc. 161 at 25.

Before proceeding further, the Court must ascertain whether the ALI Policy is a "claims made" policy or an "occurrence policy" because there is a "critical distinction" between the role of notice between the two. An "occurrence" policy covers the insured for acts that occur within the policy period regardless of whether notice is given to the insurer during the policy period. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 n.2 (5th Cir. 1999) (citation omitted). In contrast, a "claims-made" policy covers the insured only for claims made during the policy period regardless of when the covered act occurred. *Id.* Here, the ALI Policy is plainly an occurrence policy. With that type of policy, "any notice requirement is subsidiary to the event that triggers coverage." *Id.* at 658. Thus, an insurance company cannot deny coverage based on *untimely* notice unless it can point to actual prejudice stemming from the delay. *Id.* at 658-59; *see also PAJ, Inc. v. The Hanover Ins. Co.*, 243 S.W.3d 630, 631 (Tex.

2008) (holding that "an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation").

This case differs, however, because Zavala Diaz provided Defendants with *no notice* whatsoever of Plaintiff's claim against him. Notice and delivery-of-suit-papers requirements in insurance policies serve two purposes: "(1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer that a defense is expected." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008). An insurer's "[m]ere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the [ ] insured first *requests* a defense—a threshold duty that the insured fulfills by notifying the insurer that [he] has been served with process and the insurer is expected to answer on [his] behalf." *Id.*

In sum, an insurer has no duty to defend or liability under a policy until the insured party complies with the policy's notice-of-suit conditions and demands a defense. *Jenkins v. State & Cty. Mut. Fire Ins.*, 287 S.W.3d 891, 897 (Tex. App.—Fort Worth 2009, pet. denied). "This is true even when the insurer knows that the insured has been sued and served and when the insurer actually defends other insureds in the same litigation, as happened in . . . *Crocker*." *Id.*; *see also Liberty Ins. Corp. v. Arch Ins. Co*., No. 4:20-CV-098-A, 2021 WL 1950037 at *4 (N.D. Tex. May 14, 2021) (holding that insurer was prejudiced as a matter of law where insured failed to timely give notice of claims for defense and indemnity even though insurer had knowledge of the trial); *Hudson v. City of Houston*, 392 S.W.3d 714, 725–26 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that insured's failure to request a defense prejudiced insurer as a matter of law, even though insurer was also a defendant in the same suit, because a default

judgment was entered against the insured). When an insured does not give notice of a claim to

his liability insurer before entry of an adverse judgment against him or a settlement, the insurer is

prejudiced as a matter of law because the insurer has been deprived of its ability to defend the

lawsuit or participate in the settlement. *See Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165-

66 (Tex. 1993). These cases thus require a finding that Defendants are not subject to liability

under the ALI Policy because have been prejudiced as a matter of law by Zavala Diaz's failure to

comply with the ALI Policy's notice provision.

In an attempt to avoid this result, Plaintiff argues that Avis, as well as its independent

claims adjuster, Sedgwick, and Sedgwick's claims examiner Keever, and defense counsel

provided the requisite notice to Ace on behalf of Zavala Diaz. Doc. 137 at 20-21, 38-41; Doc.

138 at 14; Doc. 144 at 40-41. This is essentially an "agency" argument as Plaintiff suggests that

the aforementioned parties' notifying Ace of the Zavala Diaz litigation should be sufficient

notice to Ace. The Court has found no authority that directly supports this argument, however.

*But see L'Atrium On The Creek I, L.P. v. Nat'l Union Fire Ins. Co. of Pgh.*, 326 F. Supp. 2d 787,

792-93 (N.D. Tex. 2004) (holding no coverage applied where notice of suit was given in injured

party's demand letters because the plaintiffs may have had many reasons for not notifying

insurer that they had been served with process and were seeking a defense and indemnity).

As noted above, the ALI Policy provides that written notice of a loss must be given "by

or on behalf of the Insured to [Ace] or any of its authorized agents in addition to any obligation

the Insured may under the [Rental Agreement]." Doc. 161 at 25. While this language seems to

suggest that Avis, Sedgwick, and/or others *could* supply Ace with some measure of general

notice, the remainder of the provision makes clear that the insured himself must "immediately

forward to [Ace] every demand, notice, summons or other process received by him or his

19

representative."  Doc. 161 at 25; *see also* Doc. 161 at 23 ("By accepting [ALI] in the Rental

Agreement, the Insured who signs the Rental Agreement agrees that he/she is acting on his/her

own behalf . . .").  That did not occur here.  Accordingly, Defendants are entitled to summary

judgment on Plaintiff's claim for breach of the ALI Policy.

### C.  Plaintiff's Extra-Contractual Claims

Defendants next move for summary judgment on Plaintiff's extra-contractual claims.

Doc. 134 at 34-36.  Plaintiff contends that Defendants' effort is premature and meritless.  Doc.

144 at 52-55.  It is firmly established, however, that a party's status as a third-party claimant

precludes him from asserting some extra-contractual claims, including (1) breach of the duty of

good faith and fair dealing; (2) violations of the Texas prompt payment statute; (3) unfair

settlement practices; and (4) violations of the DTPA.  *See Landmark*, 530 S.W.3d at 769-70

(collecting cases).  Defendants are entitled to summary judgment on each of those claims.

As to Plaintiff's fraud and negligence claims, Texas' economic loss rule precludes

recovery in tort when the loss complained of is the subject matter of the parties' contract.  *See*

*Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  In other words, a claim in

tort will not lie when the only injury alleged is for economic damages caused by a party's failure

to perform under a contract.  Nevertheless, if the defendant's conduct would give rise to liability

independent of the fact that a contract exists between the parties, the plaintiff may bring a tort

claim in addition to a claim for breach of contract.  *Id.* at 495.

To determine whether a plaintiff may recover on a tort theory, courts look at the nature of

the plaintiff's loss.  *See Sterling Chems, Inc. v. Texaco, Inc*., 259 S.W.3d 793, 796-98 (Tex.

App–Houston [1st Dist.] 2007).  For example, a defendant negligently burning down a house

would give rise to liability irrespective of the fact that a contract existed between the parties.  *Id.*;

*see also Century Sur. Co. v. Hardscape Const. Specialties, Inc.*, 578 F.3d 262, 270 (5th Cir. 2009) (noting that while plaintiff's cause of action for faulty pool and deck construction sounded solely in contract, if it had alleged that faulty construction *separately* damaged its business interests or adjacent property, it might have had a tort cause of action as well).

In this case, Plaintiff's tort claims stem solely from Ace's alleged breach of the ALI Policy. Plaintiff has not alleged any independent injury outside of the economic losses caused by Ace's actions. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011) (holding that the key to these tort-based exclusions is whether the defendant owes the plaintiff a duty independent from the contractual duty). As such, Defendants are entitled to summary judgment on Plaintiff's fraud and negligence claims.

Lastly, Plaintiff sued Defendants for conspiracy. Doc. 115 at 32-33. Under Texas law, a civil conspiracy is:

> a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983) (citations omitted). A claim for civil conspiracy, however, also requires an underlying tort that has caused damages. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Because the Court has concluded that Plaintiff's other extra-contractual claims fail, this one does as well.

## VI.    CLAIMS AGAINST AVIS

The Court next addresses Plaintiff's remaining causes of action, namely, Avis' alleged breach of the Rental Agreement and violation of its *Stowers* duty.

In the operative complaint, Plaintiff asserts that Avis breached the Rental Agreement by

21

"promising indemnity" for up to $2 million "by virtue of Zavala Diaz's purchase of [ALI]".
Doc. 115 at 7-8; Doc. 144, *passim*. Avis moves for summary judgment on this claim, asserting
that (1) the Rental Agreement did not, in and of itself, provide the insurance coverage described
in the ALI Policy; and (2) Plaintiff is not entitled to recover from Avis any self-insurance
proceeds under either the Rental Agreement or the ALI Policy because, once Zavala Diaz
purchased ALI, Avis lost its self-insured status and itself became a "named insured" under the
ALI Policy. Doc. 134 at 25-27. Avis posits that the result is the same regardless of what Zavala
Diaz may have otherwise understood or expected. Doc. 150 at 23 (citing *Nautilus Ins. Co. v.
Country Oaks Apts. Ltd*, 566 F.3d 452, 458 & n.4 (5th Cir. 2009) ("[i]t is irrelevant that a
reasonable insured might not expect this result" as "Texas law does not look to the 'reasonable
expectations' of the insured.")).

Upon consideration, the Court agrees. Under no reasonable reading of the Rental
Agreement can Avis be said to be obligating itself to indemnify Plaintiff for $2 million. *See
Robineau*, 6 S.W.3d at 336. The Rental Agreement provides that if a renter decides to buy ALI,
Avis' minimum required coverage becomes the primary coverage and, combined with the ALI,
total damages cannot exceed $1 million or $2 million depending on the terms of the ALI Policy.
Doc. 135 at 7-8; *see also* TEX. TRANSP. CODE §§ 601.072(a) & 601.124 (providing that when a
renter does not purchase ALI, a car rental company need only provide $30,000.00 in coverage
for bodily injury to or death of one person in an accident). Because Avis' self-insurance duties
thereby yield, the ALI Policy becomes the relevant policy in this case.

In that event, Avis becomes a "Named Insured" under the ALI Policy, while the
authorized driver of the car becomes an "Insured." Doc. 135 at 12, 22. It is the ALI Policy, not
the Rental Agreement, that obligates Avis to pay the first $30,000.00 of the limits when coverage

is established,[5] to wit: "[L]iability for any loss shall attach to [Ace] only after the Underlying

Protection [sic] has admitted liability or shall have been held liable to pay the full amount of its

liability."[6] Doc. 135 at 20; *see also* Doc. 161 at 16 (ALI Policy stating, "[Ace] will pay all sums

in excess of those payable under the terms of the [Rental Agreement], up to the limit of liability

identified [herein], that the Insured is legally obligated to pay as damages" for a covered event);

Doc. 138 at 104-05, 118, 128 (Keever testifying that if a judgment against an insured exceeds

$30,000.00, the first $30,000.00 is paid by Avis and the remainder by Ace). The claim adjuster's

notes indicate that Zavala Diaz was 100 percent at fault for the accident and Avis accepted the

claim, thus admitting liability. Doc. 138 at 364; *see Barbara Tech. Co. v. State Farm Lloyds,*

*589 S.W.3d 806, 819-20 (Tex. 2019)* (holding that until an insurer accepts a claim, thereby

admitting liability, the insurer is not liable for a claim under the policy). For these reasons, the

Court finds that Plaintiff's breach of contract claim against Avis fails as does his related *Stowers*

claim. In light of the Court's conclusions, Plaintiff's claims against Defendants for collection by

a judgment creditor and the turnover of policy proceeds are rendered moot.

## VII. CONCLUSION

For the reasons stated above, Defendants' *Rule 56 Motion for Summary Judgment*, Doc.

133, should be **GRANTED**, Ace's *Rule 12(b)(1) Motion to Dismiss Plaintiff's Third Amended*

*Complaint*, Doc. 160, should be **DENIED**, and Plaintiff's *Rule 56 Motion for Summary*

*Judgment on Coverage, Breach of Contract, and Extra-Contractual Liability for Violation of the*

---

[5] Moreover, to the extent there is any conflict between the Rental Agreement and the ALI
Policy, "the terms of the policy will at all times control." Doc. 135 at 8.

[6] "Underlying Protection" refers to "a standard policy of automobile liability insurance or
an approved program of self-insurance." Doc. 135 at 23.

*Texas Insurance Code, For Deceptive Trade Practices*, Doc. 136, should be **DENIED**.

Accordingly, this case should be **DISMISSED WITH PREJUDICE**.

　　　　**SO RECOMMENDED** on March 11, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).